(74 App. Div. 197.)

## In re HARLEM RIVER BRIDGE.

(Supreme Court, Appellate Division, First Department.   July 8, 1902.)

1. MUNICIPAL CORPORATIONS—WIDENING STREETS—DAMAGES.
   Where a portion of a lot adjoining a city street is taken to widen the street, the owner is only entitled to consequential damages, for the destruction of his easement in the street, in case the taking is in fee simple absolute, so that the city can use it for any purpose, and not in trust for street purposes.

2. SAME—AMOUNT OF LAND TO BE TAKEN.
   City authorities authorized to take land for public purposes should take no more land and no greater estate therein than necessary therefor.

3. SAME—NATURE OF TITLE TO BE ACQUIRED—OPTION OF CITY.
   When the authority of a city to take real estate for public purposes is not limited to a mere taking in trust for the particular purpose, it may elect as to the nature of the title to be acquired.

4. SAME—CONSTRUCTION OF STATUTE.
   Laws 1895, c. 986, authorizing the construction of a bridge, and empowering the city to acquire title in fee for the construction of the bridge and approaches thereto, does not necessarily operate to make a taking of property to construct a street alongside the bridge approach pass title in fee simple absolute to the city, thus entitling the property owner to consequential damages based on such taking, on the theory that the city can use the property for any purpose; as under the definition in 1 St. at Large (Edmonds' Ed.) pt. 2, c. 1, §§ 2, 3, providing that every estate of inheritance shall be termed a fee simple, or fee, and every such estate, when not defeasible or conditional, shall be a fee simple absolute or absolute fee, a distinction is recognized between a fee and a fee simple absolute.

Appeal from special term, New York county.

Application by the city of New York to condemn property for the approach to the Harlem river bridge. From a judgment confirming the report of commissioners awarding damages, the city appeals. Affirmed on condition of the acceptance by the property owner of a reduction of the damages awarded, otherwise reversed.

This proceeding was begun by a petition dated February 27, 1900, by the city of New York, made upon request of the board of public improvements, praying that three commissioners of estimate and assessment be appointed for the acquisition by the city of land and premises within the lines of the approaches to the bridge over the Harlem river at West 145th street, in the borough of Manhattan, and East 149th street, in the borough of the Bronx. The petition recites that the board of public improvements deems it necessary, useful, and proper for the public interest and convenience to acquire the title to certain specified land and premises "for the purpose of acquiring title to the approach to the bridge * * * at West 145th street, * * * and the approaches to the bridge * * * at 149th street, * * * pursuant to the several acts of the legislature"; that the said approaches are shown on maps duly filed with the register, the corporation counsel, and the president of the board of public improvements; and that "the said approach and approaches have been heretofore duly laid out, and the map or plan of New York City had been duly altered, by the action of the mayor, aldermen, and commonalty of the city of New York, or its successor, through one of its duly constituted boards or commissions or officers, pursuant to the authority therein vested by law, and the map showing said street or avenue have been duly certified and filed in the proper offices as required by law."

¶ 1. See Eminent Domain, vol. 18, Cent. Dig. § 153.

The building of the bridge was authorized by chapter 986 of the Laws of 1895, which provided in section 1 that the commissioners- of the department of public parks might "erect and construct of stone, iron or steel * * * a suitable drawbridge and approaches thereto with the necessary abutments and arches over adjacent streets or avenues * * * across the Harlem river in said city connecting the easterly end of 145th street * * * with the westerly end of 149th street, * * * or at such points on said streets or avenues as the said commissioners shall ascertain and determine to be practicable, and to make such changes in the grade lines of the streets and avenues approaching the said bridge as may be necessary to carry out the purposes of this act and for the proper construction of the improvements hereby authorized." The act further provided that the board of estimate and apportionment should approve the plans and specifications, and the proposed changes in grade of the streets and avenues should be approved by the board of street opening and improvements; and in section 3 it was provided that, besides the stipulated price for the construction of the bridge, there should be paid such further sum as was necessary "for damages caused by reason of the change of grade of streets or avenues approaching the same" as may be awarded by the board of assessors, "whose duty it shall be to estimate the damages which each owner of land fronting on such street or avenue will sustain by reason of such change to such land or to any improvements thereon." Section 4 authorized the city "to acquire title in fee to any land which they may deem necessary for the purpose of the construction of the said bridge and approaches, with the necessary abutments or arches as aforesaid, and to acquire any right or easement which it may be necessary to take for temporary purposes"; and to that end application might be made for the appointment of commissioners of estimate, "specifying the lands or easements sought to be acquired for the purpose aforesaid." The provisions of law relating to the taking of private property for public streets or places in the said city were made applicable "as far as may be necessary to the acquiring of the said land as aforesaid."

By an order dated June 27, 1900, commissioners were appointed, and thereafter notified all parties interested in the real estate in question to present their claims, and various meetings were held and testimony taken relative to the value of the several parcels of land. At the meetings of the commissioners testimony was given, and maps, contracts, and specifications were presented in evidence, relative to the land and premises that had been set apart to provide for the bridge and the approaches thereto, and to the dimensions and construction of the bridge itself, and other improvements undertaken in connection with it.

The plan adopted by the city authorities for the building of the bridge, together with suitable approaches, included the taking of two strips of land, each 25 feet wide, running from Lenox avenue to the Harlem river on the north and south side of West 145th street, in the borough of Manhattan; the taking of a piece of land running along the north side of East 149th street, in the borough of the Bronx, from the Harlem river to River avenue, of a width of about 50 feet, and cutting through from the corner of River avenue and East 149th street to Exterior street, so as to form a continuation thereof and an approach to the new bridge; the taking of a strip of land along the west side of River avenue up to the south side of East 149th street, to widen River avenue, and form a broader approach to the bridge; and the taking of two triangular pieces of land between River avenue and Gerard avenue, on either side of East 149th street, so as to widen that street.

The specifications for the bridge structure show an inclined elevated causeway about 75 feet wide, running from Lenox avenue along the middle of West 145th street to the bridge proper at the Harlem river, and on the Bronx side from Exterior street as extended and River avenue, along the middle of East 149th street as widened, to the river. At the bulkhead there was an elevation of 30 feet. West 145th street originally measured 100 feet in width, so that the structure lies entirely within it; and, with the widening of that street of 25 feet on either side, there is now a space

of about 37 feet on each side of the causeway, or, deducting the sidewalk, which measures nine feet, the street surface is about 26 feet in width. In East 149th street the structure on the north side rests upon land taken for that purpose, while the south side of the causeway is in the original street. Here, as in West 145th street, sidewalks and spaces of the same dimensions are provided between the structure and the house lines. These side streets, leading down to the river, are to be paved, and plans were shown for placing in them sewers with branches for the house lots, which sewers are to take the place of the sewer which originally ran through the middle of the streets.

After hearing testimony as to the value of the premises taken and the damage sustained by reason thereof by the owners, a report was prepared, together with a list of awards for damage, in which two of the commissioners joined. They found that the title to each and every piece or parcel of land lying within the lines of the approaches to the bridge duly "vested in the city of New York," and that the aggregate award for lands so acquired was $941,410.30. The third commissioner declined to sign the report for the reason that in his opinion an erroneous element of damage was allowed in appraising certain of the lots, and he shows that, of the total damage awarded, $378,622.40 was for actual damage, in which all the commissioners agreed, and $562,187.90 for additional damage allowed by the majority for restricted access to street, or consequential damage by reason of the alleged taking by the city of the fee simple absolute to the land in question, and not the fee subject to the easements of the abutting owners upon and over the streets. The report of the majority of the commissioners was confirmed, the court holding that, as the act did not in terms provide for the taking of land "in trust for the purposes of a public street or avenue," the city does not take under such an implied trust, but the title acquired is in fee simple absolute. From the order confirming the report, excepting as to parcels numbered 1, 2, 3, 10, and 11, which were taken in their entirety, the city appeals.	.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John P. Dunn, for appellant.
Thomas Bassford, for respondents Morris et al.
Henry H. Sherman, for respondent Mott Haven Co.
John C. Shaw, for respondent Mary C. Pinkney.

O'BRIEN, J. No question arises upon this appeal as to any lands actually taken for and covered by the causeway or bridge structure. The property to which our attention is called was taken for other purposes in connection with the improvement, and the precise issue is whether for the taking of such property consequential damages should be awarded. By consequential damages we mean such as are inflicted by the destruction of easements in and over streets which the property before such destruction enjoyed.

The respondents are owners of land on either side of the structural approach in West 145th street, and on the north side of the causeway in East 149th street, and along River street south of 149th street. On River street no structure has been erected, all that has been done being to widen the street to render the bridge more accessible. With respect to the land along West 145th street a widening has also taken place, but none of the land has been used in the building of the causeway or inclined approach of the bridge. Had these strips of land not been taken, there would still have been on either side of the causeway an unobstructed street surface from

Lenox avenue to the river of about 12 feet in width, and thus the easements upon and over the street, although restricted in extent and character, would still be retained by the abutting owners. With the widening of the street the abutters have been enabled to preserve almost unrestricted their easements of light, air, and access. The side streets are not as wide as was originally 145th street, and opposite the property of the abutting owners there now arises the masonry wall of the inclined causeway. Some damage has thus been inflicted, but the street is preserved, access is insured, sewers are provided, and the situation is quite different than if the masonry wall had risen from the border line of the abutting owners' property.

What has just been said applies equally to the land along the north side of East 149th street. There some of the land taken has been used and is now covered by the elevated causeway, and had nothing more been done the rule of damages applied would have been the correct one, for then the property line would extend up to the line of the causeway itself. Sufficient property, however, was taken in addition to make, along the north side of the structure, a street and sidewalk on the sides of these inclined approaches, and there is to be now from River avenue to the Harlem river a paved street, with suitable sidewalk and with sewer provided, assuring to the abutting owners all the usual street easements. In fact, the position in which these abutting owners, as well as those on West 145th street, find themselves, is precisely the same as the position in which the property owners along the south side of East 149th street are placed by the building of the bridge. There the street surface in front of their property has been narrowed also, and the masonry wall rises before them, but it is not contended that they have thereby suffered any consequential damages in addition to actual damages inflicted.

Unless the title acquired or to be acquired is such that, though apparently devoted to a street use, the city at any time without the consent of the abutting owners, and without making compensation, can change such use, divert the property to any other purpose, or actually sell it, no consequential damages can be awarded. In other words, the fee which the city acquires must be fee simple absolute.

Some of the respondents find comfort and apparent support in the claim that the city takes title in fee simple absolute by insisting that the land is to be used as an approach to the bridge, and that an approach to a bridge is not a street. "There is no mystic force in terms or charm in words." The space leading to a bridge may be both a street and an approach, and it requires little reasoning upon the subject to conclude that a street may constitute an approach to a bridge, and that an approach to a bridge may be something entirely different from a street. This is well illustrated in some of the bridges which have been built by the city.

Thus with respect to the Washington bridge, where no streets existed, and it was necessary to take property, not alone for a bridge proper, but for approaches thereto, there did not from such taking of the lands result the creation of a street in any such sense that it gave to those whose property abutted on such approaches easements over the same as though streets had been laid out. Again, in the

Jerome avenue approach to the Macomb's Dam bridge extending over marsh land, there were no streets and no necessity for them. The situation is entirely different, however, where streets have been laid out, and the legislature authorizes a bridge and causeway, the structure of which is to actually occupy the whole or a part of such streets. Thus, in the cases of the approach to the Third avenue bridge at 138th street, and the Willis avenue bridge, where streets on either side were provided for, and the approaches were located in existing thoroughfares, awards were made on the theory that the lands remaining after part were taken were to still enjoy easements of light, air, and access, though to some extent such easements were impaired by the erection of the structural approach. In such a case the abutting owners have easements which, if interfered with or taken away, entitle them to compensation, and if totally destroyed, so as to deprive the land remaining of all easements of light, air, and access, there would necessarily in the award have to be included, in addition to the other damage, the consequential damage thus inflicted upon the land by reason of the destruction of such easements.

It would serve no useful purpose to continue a discussion as to when a street is not a street, but is an approach to a bridge, because it tends to confuse, rather than clarify, the subject. With respect to an improvement such as the construction of a bridge to be erected, where formally there were no streets, and where it is necessary to take the land in fee simple absolute, and pay the full value thereof, the rights and interests of abutting owners in and to such property, whether called a street or an approach to a bridge, are entirely different from the placing of a bridge in the whole or part of a street already existent. To call the space which leads to the causeway a street or an approach is not controlling, but in each instance the intent of the legislature, the existing conditions when the bridge plans were filed, and the extent and character of the fee which the city must acquire, are determinative of the damage suffered by property owners.

In this proceeding some of the property owners had easements upon streets a part only of which have been taken, and some abut on land the fee of which was taken for street purposes, and the question is, was the city authorized and will it acquire a title in fee simple absolute so that it may hereafter divert such lands from their present use as streets, and destroy the easements over streets as such which the abutting owners would enjoy?

In condemning lands in invitum for public purposes, it is the duty of those upon whom such power is conferred to see to it that no more land is taken, and no greater damage is done to what remains, than is necessary for the public use intended. Where, therefore, a doubt exists as to the amount of land to be taken, or the estate in the land to be acquired, it could be resolved by two considerations, —the one to which we have already adverted, that no more should be taken than is necessary for the public use; and the second that, if there is any option, it rests with the public authorities to determine the extent of the estate in the land which the city shall acquire. Sweet v. Railroad Co., 79 N. Y. 300; Washington Cemetery v. Pros-

pect Park & C. I. R. Co., 68 N. Y. 594; Railroad Co. v. Kip, 46 N. Y. 551, 7 Am. Rep. 385. As we shall attempt to show later, the city did not need to take the fee simple absolute in such premises, but only the fee in trust for street purposes, and it elected by its attitude to limit its taking accordingly.

The property owners contend, however, that, under the terms of the act which authorizes the construction of the bridge (chapter 986, Laws 1895), the authorities, contrary to their own wishes and without any necessity for any such estate being acquired, were obliged to take an absolute and unqualified estate in fee simple; and therefore that the city having thus the right to use the lands so acquired for any and all purposes, even to the extent of destroying any easements of the abutting owners in and over them, such owners are entitled, not alone to the actual damages suffered in the value of the property taken, but also additional compensation for the consequential damages which would result to the rest of their land. If in error as to their construction of the act or the fee which the city must take, then to a certainty their entire argument must fall for want of support.

With respect to the extent of the estate which it is asserted the city was bound to acquire, we are referred to the language employed in section 4 of the bridge act, which authorizes the city "to acquire title in fee to any land which they may deem necessary for the purpose of the construction of the said bridge and approaches, with the necessary abutments or arches as aforesaid, and to acquire any right or easement which it may be necessary to take for temporary purposes." The words used in this section, "to acquire title in fee," are likewise employed in the resolutions of the board of public improvements pursuant to which this proceeding was instituted, and in the petition itself for the appointment of the commissioners, and upon this mainly rests the argument that the language is mandatory, and requires that the city shall take a fee simple absolute in the land. Differently expressed, the insistence is that the term "title in fee" is equivalent to the term "a fee simple absolute" or "an absolute fee." That this is a confusion of terms will be seen by reference to the definitions relating to the creation and division of estates to be found in 1 St. at Large (Edmonds' Ed.) p. 670. There it is said (part 2, c. 1, art. 1, § 2): "Every estate of inheritance, notwithstanding the abolition of tenures, shall continue to be termed a fee simple or fee; and every such estate when not defeasible or conditional, shall be termed a fee simple absolute or absolute fee." And the following section (section 3) provides: "All estates tail are abolished and every estate which would be adjudged a fee tail according to the law of this state as it existed to the twelfth day of July, one thousand seven hundred and eighty-two, shall hereafter be adjudged a fee simple; and if no valid remainder be limited thereon, shall be a fee simple absolute." By referring to the subsequent sections of the article relating to the creation and division of estates, it will be seen that these distinctions are observed throughout.

We may be pardoned for restating these definitions which for such a long period have existed in our laws, and have so frequently been

quoted in full in the decisions of our courts, but it seems necessary, in view of the insistence made that there is no difference between a fee simple or fee and a fee simple absolute or absolute fee. Bearing in mind the distinction which, as shown, exists, it will be noted that the bridge act uses the words "title in fee," which are as applicable to a fee simple as to a fee simple absolute. What was unquestionably intended by that act, in conformity with the general policy of the law, was to confer upon the public authorities the right to acquire such interest in the land more or less as might be needed to carry out the purposes of the act. In our view, therefore, the language quoted is not mandatory in requiring the city to take the land in fee simple absolute, our construction being that it was intended thereby to confer authority to take such estate in the land as was essential for the purposes of carrying out the public improvement.

With respect, therefore, to land taken for the direct approach to the bridge, or as part of the causeway, or upon which any part of the bridge structure was to be placed, it was essential, and authority undoubtedly was given, to take title in fee simple absolute. For the reason, however, that in accomplishing the improvement intended it would be necessary to utilize parts of the streets, and access to other streets and avenues might, in consequence, be interfered with, authority was given, in connection with the building of the bridge, to render the destruction of streets for street purposes, and of the means of accessibility to the river front, as little injurious to the public and the abutting owners as practicable. Such objects, so far as it was necessary to widen streets, required merely that land should be taken for street purposes.

It is under this construction alone that any warrant can be found for holding that the authorities had the right to condemn lands for purposes other than those directly and essentially connected with the bridge itself and its structural approaches. We do not understand (and therefore do not discuss the question) that any claim is made that it was not competent under this act to take land to be used for street purposes, so as to restore access to the river front, and leave to abutting owners their easements in and over the streets as thus recreated or widened outside of the bridge structure. Whatever might be said upon the subject of the power of the authorities to take lands for purposes other than those which strictly pertain to the bridge and its necessary approaches, it appears that all parties acquiesce in the view that they had such power, and it is needless for us to express any opinion thereon or discuss the subject.

As we understand it, the claim of the respondents is limited to the contention that, as to the lands used for the purpose of widening the streets on either side of the bridge, so as to give an approach to the river front and intersecting streets, the authorities were directed by the language of the act to take title in fee simple absolute, and thus the right was conferred upon the city to destroy thereafter the easements of the abutting owners in and over such lands. This contention, as we have attempted to point out, we do not regard as sound, thinking, as we do, that the language of the bridge act is not susceptible of the construction sought to be placed upon it, and that the city's title

to lands along the side of the bridge, and added to the street, was strictly limited to the purposes for which the land was needed, namely, for street purposes. The suggestion that the bridge might hereafter be widened so as to cover the land used for street purposes is disposed of by the fact that upon locating the bridge the power of the city to alter, change, or enlarge it was forever gone, and no such change or 'widening could be done without new legislative authority first had and obtained.

Our construction, therefore, of the act (chapter 986, Laws 1895) authorizing the building of this bridge, with its approaches, is that it contemplated a change of grade of West 145th street and East 149th street so as to connect these streets with the bridge, and also the widening of the aforesaid streets so they should not be cut off from the Harlem river. This, we think, is shown by its very title, which is: "An act to provide for the construction of a drawbridge over the Harlem river connecting the easterly end of 145th street and the marginal or exterior street in the 12th ward in the city of New York with East 149th street and exterior street in the 23rd ward of said city." And the plans filed pursuant to the act, together with the specifications, provide for a street on either side of the causeway leading to the bridge in West 145th street between Lexington avenue and the bulkhead line of the Harlem river, and in East 149th street between Exterior or River avenue and the bulkhead line of the Harlem river.

With respect, therefore, to the land which was to be taken in order to widen the street on either side of the causeway, so as to permit of access to the river as shown upon such plan, it seems to us clear that the title which the city had a right to and did acquire therein, and all that the act authorized them to acquire, was a title in trust for street purposes, and the taking of title thereto in fee simple absolute was neither contemplated nor warranted by the language of the act. Under such circumstances, it would be manifestly unjust to permit these abutting owners to obtain consequential damages for an injury to their land which it never has received and can never suffer, while at the same time they obtain, not alone the benefit which, in common with all the land in that section of the city, this improvement will confer upon their property, but in addition enjoy easements in and over the streets similar and equal to those enjoyed by every other property owner upon streets which have been laid out and dedicated to street purposes in other portions of the city. On the other hand, no injustice can result in not allowing to the owners consequential damages, because in the order confirming the awards made by the commissioners provision can be made showing that the extent of the title which the city obtains is merely one in trust for street purposes, and thus all the rights and easements which abutting owners have on other streets will be secured to the respondents. As the commissioners have made awards for consequential damages on the assumption that a greater interest in the land acquired has been obtained than was authorized or necessary, and a greater interest in fact than has actually been taken by the city, it follows that, unless the amount included for consequential damages is deducted,—and such sums are not in dispute,—the

report must be sent back to the commissioners for revision and correction, as indicated.

The order is accordingly reversed, and the report returned to the commissioners, unless the deduction mentioned be agreed upon by the parties; in which case the order, with such modification, is affirmed. No costs. All concur.